**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


David J. Widi, Jr.

        v.                              Civil No. 13-cv-536-SM

Strafford County et al.


**REPORT AND RECOMMENDATION**


    In this action, plaintiff David J. Widi, Jr., alleges that
he was subjected to the excessive use of force on November 19,
2010, in violation of his Eighth and Fourteenth Amendment rights
and his rights under state law, while he was a federal pretrial
detainee, incarcerated at the Strafford County Department of
Corrections ("SCDC").  Before the court is defendants' motion
for summary judgment (doc. no. 25), in which they assert that
Widi failed to exhaust his administrative remedies concerning
the events that form the basis for this lawsuit.  Widi objects
(doc. nos. 31 and 33).[1]  The summary judgment motion has been
referred to the undersigned magistrate judge for a Report and

_____

    [1]Together with his objection to defendants' motion for
summary judgment, Widi filed a cross-motion for summary judgment
(doc. no. 32) in this matter, to which defendants have objected.
Widi's motion for summary judgment is addressed in a separate
Report and Recommendation issued on this date.

Recommendation.  See LR 72.1.

## Summary Judgment Standard

"Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Ponte v. Steelcase Inc., 741 F.3d 310, 319 (1st Cir. 2014) (internal quotation marks and citation omitted); see also Fed. R. Civ. P. 56(a).  When ruling on a motion for summary judgment, the court must "view[] the entire record 'in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.'" Winslow v. Aroostook Cnty., 736 F.3d 23, 29 (1st Cir. 2013) (citation omitted).  "The nonmovant may defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trialworthy issue persists." Sánchez-Rodríguez v. AT&T Mobility P.R., Inc., 673 F.3d 1, 9 (1st Cir. 2012) (internal quotations and citation omitted).

## Background

On November 19, 2010, Widi was a federal pretrial detainee at the SCDC.  On that date, Widi and an officer on his unit had a verbal disagreement.  As a result, Widi was placed in handcuffs and transported to a cell in the SCDC booking area.

Although the parties dispute many aspects of what happened

in the booking area, they agree that while in a cell in that area, Widi was sprayed with "pepper spray," otherwise known as Oleoresin Capsicum ("O.C.") spray.  They further agree that after the incident, Widi remained in the same clothing, unshowered, for a number of days.

Widi states that he was eventually moved out of the booking area and allowed to shower and change his clothing on November 27, 2010.  Widi further states that, on December 2, 2010, he was transferred out of the SCDC to an out-of-state correctional facility.

The parties disagree as to whether Widi took any action to exhaust his administrative remedies concerning the November 19, 2010, events prior to his transfer.  Widi states that he filed a grievance on November 29, 2010, but was transferred out of the SCDC before he received a response.  Defendants claim that Widi did not file any grievance at the SCDC concerning the incident. The parties agree that once discharged from the SCDC, Widi did not take any further action to exhaust his administrative remedies with respect to the events of November 19, 2010.

## <u>Discussion</u>

I.   <u>Exhaustion</u>

According to the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison

conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Claims for which administrative remedies have not been exhausted are subject to dismissal.  See Medina-Claudio v. Rodríguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002).  "[F]ailure to exhaust is an affirmative defense under the PLRA."  Jones v. Bock, 549 U.S. 199, 216 (2007); see also Ramos v. Patnaude, 640 F.3d 485, 488 (1st Cir. 2012).  As such, it "must be raised and proved by the defense." Cruz Berríos v. González-Rosario, 630 F.3d 7, 11 (1st Cir. 2010) (citing Jones, 549 U.S. at 216).  Finally, "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002); see also Cruz Berríos, 630 F.3d at 11.

"[T]he PLRA exhaustion requirement requires proper exhaustion."  Woodford v. Ngo, 548 U.S. 81, 93 (2006).  "[A] prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require."  Acosta v. U.S. Marshals Serv., 445 F.3d 509, 512 (1st Cir. 2006) (citation omitted).

Under certain circumstances a prisoner's failure to exhaust may be excused.  "If, in fact, there was no pertinent additional relief obtainable through the grievance process, further exhaustion might be excused."  Johnson v. Thyng, 369 F. App'x 144, 149 (1st Cir. 2010) (citing Booth v. Churner, 532 U.S. 731, 736 (2001) (administrative remedies remain "available," and must be exhausted, where the administrative process provides the authority to take some action in response to grievance)).  An inmate's transfer to another correctional facility may excuse exhaustion if the transfer renders the administrative procedures at the prison unavailable.  See Johnson, 369 F. App'x at 149.

Whether an inmate has properly exhausted available remedies may be resolved on summary judgment.  See Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc).  Defendants bear the initial burden of showing that plaintiff failed properly to exhaust all generally available administrative remedies.  See id.  Then "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  Id.  The ultimate burden of persuasion remains with the defendant.  See id.

## II.   <u>Analysis</u>

The initial question the court must consider, therefore, is whether there were administrative procedures available to Widi, and if so, whether he properly exhausted them, in accordance with the SCDC grievance policy.[2]  That policy provides for a grievance procedure that is the exclusive means by which an inmate may grieve conditions of confinement or mistreatment by SCDC employees.  <u>See</u> Doc. No. 25-3 at 2.  The policy generally provides seven days after the discovery of a grievable issue for the inmate to make a "verbal/informal initial grievance."  <u>Id.</u> at 3.  The policy further provides fourteen days from the date of discovery of a grievable issue to file a formal written grievance.  <u>Id.</u>  The policy also states, however, that "[g]rievances by discharged inmates are not considered valid for the purposes of an administrative remedy."  <u>Id.</u>

Defendants assert that Widi took no steps to formally grieve that incident as required by SCDC policy.  Widi, among other things, responds that: 1) he informally grieved the incident to appropriate parties in accordance with the grievance policy of the SCDC; 2) he filed a timely formal grievance three

---

[2]Defendants have attached the "Strafford County Department of Corrections Operational Guidelines" § 3.6.04, "Inmate Grievance Procedure" (Sept. 15, 2008), to their motion for summary judgment.  <u>See</u> Doc. No. 25-3.  Plaintiff has not disputed that this is the operative grievance policy.

days prior to his transfer out of the SCDC, but did not receive any response; and 3) upon his transfer, the SCDC grievance procedures became unavailable to him, and thus, he was relieved of any obligation he may have had to formally grieve the November 19, 2010, incident.

On the day of the incident, Widi verbally complained to SCDC Capt. Bruce Pelkie about being sprayed "for no reason." See Doc. No. 33-6 ("Information Report of Bruce Pelkie), at 1. Widi further states that on November 29, 2010, he obtained a grievance form, and filed a formal written grievance. While defendants deny the existence of the formal written grievance, the court, at this time, need not resolve that dispute.

Widi states that he was transferred out of the SCDC to an out-of-state correctional facility on December 2, 2010, thirteen days after the November 19, 2010, incident. The SCDC grievance policy clearly states that "[g]rievances by discharged inmates are not considered valid for the purposes of an administrative remedy." Doc. No. 25-3, at 3. The defendants do not dispute that Widi was discharged from SCDC custody on December 2, 2010. Accordingly, as of that date, which was before Widi's formal written grievance was due pursuant to the SCDC grievance policy, the SCDC's administrative remedies became unavailable to Widi, as they were no longer "valid for the purpose[] of an

7

administrative remedy." Id.

As discussed above, prisoners need only exhaust what administrative remedies are "available" to them in order to satisfy the PLRA.  Because the SCDC's administrative grievance procedures became unavailable to Widi before the expiration of the time for initiating a written grievance, his transfer alleviated any obligation to utilize the SCDC grievance procedures to satisfy the requirements of the PLRA.

The court finds that defendants have not met their burden to demonstrate that Widi failed to exhaust the administrative grievance procedures available to him.  Defendants' summary judgment motion (doc. no. 25), therefore, should be denied, without prejudice to defendants' ability to seek summary judgment on any other appropriate basis, in accordance with the deadlines set by the court in this matter.[3]

## Conclusion

For the foregoing reasons, the district judge should deny the defendants' motion for summary judgment (doc. no. 25).  Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R.

---

[3]In an Order issued on this date, the court vacates the November 5, 2014, scheduling order (doc. no. 18) and directs the parties to confer and propose new deadlines in this case.

Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011).


_____
Andrea K. Johnstone
United States Magistrate Judge

June 18, 2015

cc:  David J. Widi, Jr., pro se
     Corey M. Belobrow, Esq.